IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MONTANA

MISSOULA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Cause No. CR 06-66-M-DWM |
| Plaintiff/Respondent, | |
| vs. | ORDER DENYING § 2255 MOTION AND DENYING CERTIFICATE OF APPEALABILITY |
| DAMIEN ALLEN NICKERSON, | |
| Defendant/Movant. | |

On April 16, 2010, Defendant/Movant Damien Nickerson ("Nickerson") filed a motion to vacate, set aside, or correct his sentence, pursuant to 28 U.S.C. § 2255. He is represented by attorney Jason Holden.

Nickerson's trial counsel, Lisa Kauffman, flouted a clear ethical rule by interviewing Nickerson's co-defendant, Frank Hazel, against the express prohibition of Hazel's counsel. This issue was the subject matter of Nickerson's direct appeal, which was denied on February 25, 2009. Nickerson now brings three very similar claims in his § 2255 motion.

## I. Claim 1

Nickerson claims Kauffman was ineffective. He alleges, in pertinent part:

[A] conference between trial counsel and Mr. Nickerson was held off-the-record and outside the presence of the Court. During this conference trial counsel told Mr. Nickerson not to ask for new trial counsel because the District Court would not grant his request. When the matter was then placed back on the record, Mr. Nickerson told the Court that he did not want new counsel, based on what his trial counsel told him to say. ... [A]fter Mr. Nickerson was able to break free from his trial counsel and speak with his family[,] ... he learned that if had asked for new counsel the District Court would have entertained his request. Unfortunately, by the time Mr. Nickerson learned of his ability to request new counsel it was too late.

Mot. § 2255 (doc. 149) at 4 Ground One.

Actually, after he consulted with his family, Nickerson asked for new counsel:

The Court: Okay. There was another suggestion at the Clerk's Office that Mr. Nickerson is not happy with his lawyer situation and that he wants a new lawyer. I thought we addressed that this morning. . . .
    Mr. Nickerson, is that an issue?

Defendant: Ah, yes, sir. I wanted to talk to my dad about it because he's kind of helped me out in this case.

The Court: Well, is he a lawyer?

Defendant: No. Does he have to be a lawyer to help me out?

The Court: To be involved in representing you?

Defendant: Yeah.

> The Court: Yeah.
>
> Defendant: Well, yeah, I have a problem.

Tr. (doc. 142) at 152:11-153:2. Nickerson explained that he had wanted to call Frank Hazel as a witness, but Hazel had invoked his Fifth Amendment privilege. He suggested that Hazel refused to testify because of Kauffman's behavior. I explained:

> The Court: [B]ut that doesn't have anything to do with the fact that [Hazel is] invoking the Fifth Amendment, whether he talked to Ms. Kauffman or whether he did not talk to her.
> Ms. Antenor is the one advising him, and she had represented he ... has always intended to invoke his right against self-incrimination.
> I think you're listening to your dad and not your lawyer. And I asked you this morning if it was a problem and you said no, it isn't a problem because Ms. Kauffman fully explained everything to you to your satisfaction. And then I went over that again with you and you assured me that there was no problem. And, in fact, I think you said you wanted her to represent you and you wanted to go to trial this afternoon. . . .
> I need you to tell me the reason, not your dad's reason, your reason that what you told me this morning no longer holds.
>
> Defendant: I don't have a reason.
>
> The Court: I'm sorry?
>
> Defendant: I don't have a reason.
>
> The Court: You don't have a reason.

> Defendant: No, that was my reason, what I just told you.
>
> The Court: And that being?
>
> Defendant: About Frank.
>
> The Court: Okay. Well, I need you to tell me, Mr. Nickerson, we have a jury waiting, are we going to trial or not?
>
> Defendant: No. I want a new attorney.
>
> The Court: You don't get a new attorney because you want one at this late date. Are you hiring somebody?
>
> Defendant: I don't know.
>
> The Court: Ms. Kauffman?

Tr. at 153:20-155:4. At that point, Nickerson was again permitted to consult with counsel. She reported back:

> Kauffman: ... I'm not going to be offended if he wants another attorney. I would hope I would work well with that other attorney. So I'm not trying to strong-arm Damien into going to trial . . . .
>
> Damien was getting very mixed signals and now, the final conversation we've had, the father understands that the lawyer he's been speaking to has only received piecemeal information and that it would be in Damien's best interest to proceed. Damien now feels comfortable with that decision. I believe we are ready to proceed. But he, of course, is here ready to answer any questions you have.
>
> The Court: Well, Mr. Nickerson, what do you think about all that?

ORDER DENYING § 2255 MOTION AND DENYING
CERTIFICATE OF APPEALABILITY / PAGE 4

Defendant:   She's right on that, sir, and I'm ready to proceed. Sorry for wasting your time.

The Court:   Okay. So if I understand it, you have no objection to Ms. Kauffman representing you.

Defendant:   Yes, sir.

The Court:   And that you have either talked to your father or somebody has talked to your father and everybody's on the same sheet of music here.

Defendant:   Yes, sir.

The Court:   And that is that you want to go to trial.

Defendant:   Yes, sir, it is.

. . .

The Court:   Do you feel like you're being made to go to trial against your wishes?

Defendant:   No, sir.

The Court:   Do you think that you're being treated unfairly or that there's somebody either in your family or the court or your own lawyer putting pressure on you to go forward with the trial?

Defendant:   No, sir.

The Court:   So it's your choice and you want to go forward?

Defendant:   Yes, it is.

ORDER DENYING § 2255 MOTION AND DENYING
CERTIFICATE OF APPEALABILITY / PAGE 5

    The Court: We will go forward then.

Tr. at 157:2-158:19.

    We will not go back now. Nickerson knew that a new attorney would not be appointed to represent him. That was true and not an error. United States v. Nickerson, 556 F.3d 1014, 1020-21 (9th Cir. 2009) (citing United States v. Nguyen, 262 F.3d 998, 1001 (9th Cir. 2001); United States v. Castro, 972 F.2d 1107, 1109 (9th Cir. 1992), overruled on other grounds by United States v. Recio, 537 U.S. 270 (2003)).

    Nickerson also knew that he could hire a new attorney. Kauffman said so. Nickerson's father said so. I specifically asked him whether he was going to hire someone. He chose to proceed. He was given the opportunity to express any reservations about proceeding to trial or about proceeding with Kauffman. He chose to proceed. In light of the record, it is not possible that Kauffman deprived Nickerson of an opportunity to request new counsel. He can show neither deficient performance, Strickland v. Washington, 466 U.S. 668, 687-88 (1984), nor prejudice, id. at 693. This claim is denied.

## II. Claims 2 and 3

    Nickerson further alleges that "[t]he District Court should have granted

defendant unconflicted trial counsel" and "[t]rial counsel was ineffective for not withdrawing." Id. at 5 Ground Two. Finally, he asserts that "[t]rial counsel was ineffective because she was conflicted and should have withdrawn" due to her creation of an unresolvable conflict of interest" when she "obtained information directly from Mr. Hazel." Id. at 7 Ground Three.

Interviewing a witness does not create a conflict of interest with the client. But this Court cannot decide the merits of these claims. "Grounds which were apparent on the original appeal cannot be made the basis for a second attack under § 2255." Egger v. United States, 509 F.2d 745, 748 (9th Cir. 1975). See also Sanders v. United States, 373 U.S. 1, 16 (1963) ("For example . . . [a] claim of involuntary confession predicated on alleged *psychological* coercion does not raise a different 'ground' than does one predicated on alleged *physical* coercion." (emphasis added)). "The fact that the issue may be stated in different terms is of no significance." United States v. Currie, 589 F.2d 993, 995 (9th Cir. 1979). Claims 2 and 3 were addressed on direct appeal, Nickerson, 556 F.3d at 1019-20, and must be dismissed.

### III. Certificate of Appealability

"The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), Rules Governing § 2255

Proceedings. "A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c); Lambright v. Stewart, 220 F.3d 1022, 1024 (9th Cir. 2000). This standard is met if Nickerson can show that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Miller-El v. Cockrell, 537 U.S. 322, 338 (2003) (internal quotation marks omitted).

Each of Nickerson's claims lacks merit, and the second and third were also addressed and denied on direct appeal. As to the first claim, on one hand, if counsel told Nickerson new counsel would not be appointed, she was right, and there was no error, no deficient performance, and no prejudice. Nickerson, 556 F.3d at 1020-21. On the other hand, if Nickerson means she told him he could not even hire new counsel, the allegation is contradicted by the transcript. A COA is not warranted.

Accordingly, IT IS HEREBY ORDERED as follows:

1. All claims having been denied, Nickerson's motion to vacate, set aside, or correct the sentence under 28 U.S.C. § 2255 (doc. 149) is DENIED;

2. A certificate of appealability is DENIED. The Clerk of Court shall immediately process the appeal if Nickerson files a Notice of Appeal;

3. The Clerk of Court shall ensure that all pending motions in this case and in

ORDER DENYING § 2255 MOTION AND DENYING
CERTIFICATE OF APPEALABILITY / PAGE 8

CV 10-37-M-DWM are terminated and shall close the civil file by entering judgment in favor of the United States and against Nickerson.

DATED this 30th day of April, 2010.

_____
Donald W. Molloy
United States District Court